**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JOHN RUIZ,<br>      Plaintiff,<br>   v.<br>CARMEUSE LIME, INC. d/b/a CARMEUSE LIME & STONE,<br>      Defendant.<br>------------------------------------------------------------<br>CARMEUSE LIME, INC. d/b/a CARMEUSE LIME & STONE,<br>      Third Party Plaintiff,<br>   v.<br>ILLINI STATE TRUCKING, INC.,<br>      Third Party Defendant.<br>------------------------------------------------------------<br>ILLINI STATE TRUCKING, INC.,<br>      Third Party Counter-Claimant,<br>   v.<br>CARMEUSE LIME, INC. d/b/a CARMEUSE LIME & STONE,<br>      Third Party Counter-Defendant. | CAUSE NO.: 2:10-CV-21-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss Third Party Complaint [DE 43], filed by Third Party Defendant Illini State Trucking, Inc. ("Illini") on May 18, 2011. Third Party Plaintiff Carmeuse Lime, Inc. d/b/a Carmeuse Lime & Stone ("Carmeuse") filed a response on July 15, 2011. For the reasons set forth in this Order, the Court grants the Motion to Dismiss.

**PROCEDURAL AND FACTUAL BACKGROUND**

On November 30, 2009, Plaintiff John Ruiz ("Ruiz") filed a Complaint in the Lake Superior Court against Carmeuse, alleging negligence in relation to burns Ruiz sustained to his legs from "lime" or other chemicals when Ruiz exited his truck after driving off a snowy road into a ditch on

Carmeuse's property. Ruiz alleges that he was driving while employed by Nick's Transport, LLC ("Nick's Transport"), a sub-contractor of Illini. Carmeuse removed the case to this Court on January 14, 2010, and filed an Answer on January 29, 2010.

On July 28, 2010, Carmeuse filed a Third Party Complaint against Illini for indemnification pursuant to a Motor Carrier/Shipper Agreement ("Agreement") between Illini and Carmeuse and subsequently, on November 15, 2010, re-filed the Third Party Complaint. Illini did not file an answer or otherwise respond to the Third Party Complaint. On March 1, 2011, Carmeuse filed a Motion for Entry of Default, and a clerk's entry of default was entered against Illini on March 2, 2011.

Illini filed a Motion to Vacate Entry of Default and a memorandum in support on April 6, 2011. On May 12, 2011, the Court granted the motion.

On May 18, 2011, Illini filed the instant Motion to Dismiss Third Party Complaint and a memorandum in support, seeking dismissal of Carmeuse's Third Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Illini also filed a Counterclaim against Carmeuse the same date. On July 15, 2011, pursuant to an extension of time granted by the Court, Carmeuse filed a response to the Motion to Dismiss.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d

1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 129 S. Ct. at 1949-50; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 129 S. Ct. at 1950.

In ruling on the Motion to Dismiss, the Court considers the Agreement between Carmeuse and Illini that Carmeuse attached to its Third Party Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) ("[W]e will

3

consider the exhibits attached to a complaint, but, where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.").

**ANALYSIS**

In its Third Party Complaint, Carmeuse alleges that, on December 7, 2007, John Ruiz, the plaintiff in the underlying matter, was allegedly injured on Carmeuse's property after stepping into lime and/or other chemicals and receiving chemical burns. Carmeuse acknowledges that Ruiz claims that the incident was caused by Carmeuse carelessly and negligently allowing a hazardous and dangerous condition to remain and exist on its property without warning or notice. The Third Party Complaint recognizes that Ruiz has sued Carmeuse for his damages and personal injuries arising out of the incident. Carmeuse in turn alleges that Ruiz was an employee of Nick's Transport, that Nick's Transport is a sub-contractor of Illini, and that Illini and Carmeuse had executed the Motor Carrier/Shipper Agreement ("Agreement"). Carmeuse further alleges that Ruiz was driving for Nick's Transport at the time of the incident, carrying out duties arising out of the Agreement.

Carmeuse then invokes the indemnification provision contained within the Agreement, alleging that Illini has a duty to indemnify, defend, and hold harmless Carmeuse against the allegations of Ruiz in the underlying Complaint. Specifically, Carmeuse alleges:

> All of the claims against Carmeuse, as alleged in plaintiff's Complaint, are covered by the [Agreement] between Carmeuse and Illini. As Illini agreed to indemnify, defend, and hold harmless Carmeuse for any incidents arising out of Illini's performance of the contract, which would include the subject incident.

Third Party Compl., ¶ 10. The indemnification provision which is Paragraph 12.1 of the Agreement, provides in its entirety:

4

> Carrier [Illini] shall indemnify, defend, and hold harmless Shipper [Carmeuse], its employees, agents, representatives, successors and assigns from and against any and all judgments, costs, damages, claims, causes of action and expenses (including attorneys fees) resulting from or arising out of any injuries to persons (including death) and damage to property *caused by* Carrier's [Illini's] performance hereunder or the negligent acts or omissions of the Carrier [Illini], its employees, agents, servants or representatives.

Third Party Compl., Exh. A, p. 5, ¶ 12.1 (emphasis added).[1]

In the instant Motion to Dismiss, Illini argues that this indemnity provision is governed by Indiana Code § 8-2.1-26-1 through 8-2.1-26-5, which is entitled "Invalidity of Indemnity Agreements in Motor Carrier Transportation Contracts." Illini contends that Carmeuse's claim for indemnification does not fall within the exception for allowable indemnity agreements under the statute because there are no factual allegations in the Third Party Complaint that Ruiz's injuries were caused by the negligence, intentional acts, or omissions of Illini, Ruiz, or any other agent, employee, servant, or independent contractor directly responsible to Illini.

As an initial matter, the anti-indemnity statute applies to indemnity provisions entered into or renewed after June 30, 2006. Ind. Code § 8-2.1-26-1. The Agreement containing the indemnity provision in Paragraph 12.1 at issue in this case was entered into or renewed on April 1, 2007, and, thus, is subject to the provisions of Chapter 26.

The effect of Chapter 26 is to render void and unenforceable as against public policy indemnity agreements that require one party (e.g. the carrier, Illini) to indemnify, defend, and hold

---

[1] The Agreement contains a reciprocal indemnity clause, requiring Carmeuse to indemnify Illini for the negligent acts or omissions of Carmeuse:
> Shipper [Carmeuse] agrees to indemnify, defend and hold harmless Carrier [Illini], its employees, agents, representatives, successors and assigns from and against any and all judgments, costs, damages, claims, causes of action and expenses (including attorneys fees) resulting from or arising out of any injuries to persons (including death) and damage to property caused by the negligent acts or omissions of Shipper [Carmeuse], its employees, agents, servants or representatives.

Third Party Compl., Exh. A, p. 5, ¶ 12.2.

harmless the other party (e.g. the shipper, Carmeuse) for that second party's (e.g., the shipper's, Carmeuse's) own negligence, intentional acts, or omissions. First, the statute narrowly defines the term "indemnity provision" as

> a provision, a clause, a covenant, or an agreement that:
> (1) is contained in, collateral to, or affecting a motor carrier transportation contract; and
> (2) purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, *a promisee* against liability for loss or damage resulting from:
>    (A) negligence;
>    (B) intentional acts; or
>    (C) omissions;
> *of the promisee* or an agent, employee, servant, or independent contractor that is directly responsible to the promisee.

Ind. Code § 8-2.1-26-2 (emphasis added).

The parties do not dispute that the Agreement between Carmeuse and Illini is a "motor carrier transportation contract," which is defined by the statute as

> a contract, an agreement, or an understanding covering:
> (1) the transportation of property for compensation or hire by a motor carrier as defined under this article or by 49 U.S.C. 13102(12);
> (2) the entrance on real property by a motor carrier to:
>    (A) load;
>    (B) unload; or
>    (C) transport property for compensation or hire; or
> (3) a service incidental to an activity described in subdivision (1) or (2), including storage of property.

Ind. Code § 8-2.1-26-3. The term "promisee" is defined for purposes of the statute as

> a person that an indemnity provision:
> (1) purports to indemnify, defend, or hold harmless; or
> (2) has the effect of indemnifying, defending, or holding harmless.

Ind. Code § 8-2.1-26-4.

6

Then, the statute declares this narrow definition of indemnity provision to be void and unenforceable as against public policy:

> Notwithstanding any other law, an indemnity provision under this chapter is:
> (1) against public policy; and
> (2) void and unenforceable.

Ind. Code § 8-2.1-26-5(b).[2]

The indemnity provision in Paragraph 12.1 of the parties' Agreement does not constitute a void and unenforceable indemnification agreement under the statute because it does not require Illini to indemnify, defend, and hold harmless *Carmeuse* for *Carmeuse's* negligence, intentional acts, or omissions. Rather, Paragraph 12.1 requires Illini to indemnify, defend, and hold harmless *Carmeuse* for *Illini*'s negligence, intentional acts, or omissions, which is explicitly permitted as an exception to the invalidity of indemnity provisions under the statute:

> (1) An indemnity provision in which a motor carrier [Illini] indemnifies a promisee [Carmeuse] for and only to the extent of loss or damage that results directly from the negligence, omission, or intentional act of the motor carrier [Illini] or an agent, employee, servant, or independent contractor that is directly responsible to the motor carrier.

---

[2] In its response brief, Carmeuse relies on the following quoted language, which comes from *McClish v. Niagara Mach. and Tool Works*, 266 F. Supp. 987 (S.D. Ind. 1967):
> The right to indemnity and the corresponding obligation to indemnify generally spring from contract, express or implied, and in the absence of an express or implied contract a right to indemnity generally does not exist. When indemnity is the subject of an express contract, Indiana takes the broad view that parties may lawfully bind themselves to indemnify against future acts of negligence, *whether the negligence indemnified against be* that of the indemnitor or his agents or *that of the indemnitee or his agents.*

Pl. Br., p. 4 (improperly attributing the quotation to *Thomson Consumer Elecs. v. Wabash Valley Refuse Removal*, 682 N.E.2d 792 (Ind. 1997)) (emphasis added). To the extent Carmeuse is applying this principle in the context of a motor carrier transportation contract, the italicized portion of the quotation has been abrogated by Indiana Code § 8-2.1-26-5(b), which now prohibits indemnification for the negligence of the indemnitee in motor carrier transportation contracts.

In its response brief, Carmeuse also argues that the anti-indemnification statute only precludes "indemnification" but does not preclude "defense." This is incorrect. The definition of "indemnity provision" in the statute explicitly includes "defense": "'indemnity provision' means a provision that . . . purports to indemnify, *defend*, or hold harmless, or has the effect of indemnifying, *defending*, or holding harmless . . . ." Ind. Code § 8-2.1-26-2 (emphasis added).

Ind. Code § 8-2.1-26-5(a).[3] Thus, the indemnity provision, on its face, is not void or unenforceable.

However, the Third Party Complaint nevertheless fails to state a claim for indemnification under the provision because Carmeuse has not alleged any facts that Ruiz's personal injuries were "caused by [Illini's] performance [under the Agreement] or the negligent acts or omissions of [Illini], its employees, agents, servants or representatives" to bring the claim for indemnification within the terms of Paragraph 12.1 of the Agreement. The Third Party Complaint is devoid of any factual allegation as to causation. There are no factual allegations connecting any action by Ruiz, Illini, or any other agent or representative of Illini to the injury Ruiz sustained on Carmeuse's property. Notably, the Third Party Complaint inaccurately represents the meaning of Paragraph 12.1, stating that it requires Illini to indemnify, defend, and hold harmless Carmeuse for "any incidents *arising out of* Illini's performance of the contract." Third Party Compl., p. 3 (emphasis added). Paragraph 12.1 does not require indemnification for incidents "arising out of" Illini's performance but rather requires Illini to indemnify, defend, and hold harmless Carmeuse for damages or injury "caused by" Illini's performance under the contract or the negligent acts or omissions of Illini or its agents. The allegation that Ruiz was performing under the Agreement on behalf of Illini at the time of the incident does not constitute an allegation that the injuries were caused by his performance.

---

[3] The statute provides for two additional exceptions not applicable in this case:
    (2) An indemnity provision contained in, collateral to, or affecting a motor carrier transportation contract with a regulated public utility, including an energy utility (as defined in IC 8-1-2.5-2) or an affiliate of an energy utility, if the contract relates to a utility product, service, or business operation. For purposes of this subdivision, a contract relates to a utility product, service, or business operation if it involves an activity necessary for or ancillary to the production or delivery of heat, power and light, or a product or service under the jurisdiction of the Indiana utility regulatory commission (as described by IC 8-1-1).
    (3) The Uniform Intermodal Interchange and Facilities Access Agreement administered by the Intermodal Association of North America.
Ind. Code § 8-2.1-26-5(a).

In its response brief, Carmeuse argues that a "central allegation of Carmeuse, in this matter, pertains to Ruiz's own comparative fault for the alleged injuries Ruiz alleges to have sustained." It is true that Carmeuse has asserted affirmative defenses for contributory and comparative negligence as well as for incurred risk in its Answer to Ruiz's Complaint. However, there are no such factual allegations contained within the four-corners of Carmeuse's Third Party Complaint. Rule 12(b)(6) tests the sufficiency of the allegations in the Third Party Complaint, and Carmeuse does not allege any facts in the Third Party Complaint that would state a plausible claim of negligence, omission, or intentional act against Illini or its agents. Accordingly, the Court finds that Carmeuse's Third Party Complaint fails to state a claim for relief for indemnification under Paragraph 12.1 of the Agreement.

Carmeuse argues in its response brief that Indiana's anti-indemnity statute does not apply in this case because Ruiz's underlying Complaint sounds in premises liability. However, Carmeuse has explicitly invoked the indemnity provision contained in the Agreement (a "motor carrier transportation contract" under the statute) to seek indemnification from Illini for damages Carmeuse may incur as a result of that premises liability action. Paragraph 12.1 is contained within the motor carrier transportation contract and, thus, is subject to the provisions of Indiana Code § 8-2.1-26-1 et seq. regarding the invalidity of indemnity provisions.

Carmeuse also contends that the purpose of Indiana's anti-indemnity statute is to "protect the public from accidents and confusion about who is financially liable if accidents occur and, thereby, provide financially responsible defendants," citing *Illinois Bulk Carrier, Inc. v. Jackson*, 908 N.E. 2d 248 (Ind. Ct. App. 2009). Pl. Br., p. 4. However, *Jackson* is inapposite as it does not mention or discuss any Indiana statutes or regulations, including the Indiana motor carrier safety

regulations and the anti-indemnity statute at issue in this case, and does not involve an indemnity agreement. To the extent *Jackson* discusses vicarious liability of a motor carrier for the negligence of an independent contractor under the federal motor carrier safety regulations, Illini does not challenge the allegations of the Third Party Complaint that Ruiz was an employee of Nick's Transport, hired by Illini as an independent contractor.

Moreover, the purpose of the anti-indemnity statute is to rectify what many states, including Indiana, have perceived to be an inequitable "shift of risk" in the shipper and carrier relationship in motor carrier transportation contracts when a carrier is contractually required to indemnify a shipper for the shipper's own negligence. *See* Jenifer L. Kienle, *Industry Activism and Legislation Shifts the Indemnity Burden Both Ways in Motor Carrier Contracts*, In Transit, DRI The Voice of the Defense Bar, http://www.imakenews.com/trucking/e_article001010825.cfm?x=bclPFrF,b31C2f4K,w (Feb. 5, 2008) (last visited Aug. 4, 2011); *see also Indiana Enacts Anti-Indemnification Law*, CCJ Digital, Commercial Carrier Journal, http://www.ccjdigital.com/indiana-enacts-anti-indemnification-law/ (June 2, 2006) (last visited Aug. 4, 2011). In June 2004, the American Trucking Associations published the "Model Truckload Motor Carrier/Shipper Agreement with Commentaries" to serve as a template for future motor carrier transportation agreements. The model agreement contains only reciprocal indemnity provisions documenting the agreement of the shipper and the carrier to indemnify the other for the indemnitor's negligence or intentional misconduct. Taking an additional step, several states then adopted anti-indemnification legislation, such as Indiana Code § 8-2.1-26-5(b), nullifying provisions requiring indemnification for the indemnitee's own negligence or intentional acts. *See* Kienle*, Industry Activism*.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Motion to Dismiss Third Party Complaint [DE 43], and the Third Party Complaint [DE 17 and DE 24] is **DISMISSED** *without prejudice*.

The Counterclaim of Illini against Carmeuse **REMAINS PENDING**.

SO ORDERED this 4th day of August, 2011.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record